```
DEBRA STEEL STURMER (State Bar No. 105276)
JACHYN K. DAVIS (State Bar No. 236432)
LERCH STURMER LLP
333 Bush Street, Ste. 2020
San Francisco, California 94104
Telephone:   (415) 217-6340
Facsimile:   (415) 217-2782

Attorneys for Defendants
PEARCE & FRANKMAN, INC. and
MILLEN GRIFFITH
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARJORY ANDERSON, <br><br> Plaintiff, <br><br> v. <br><br> TAMALPAIS COMMUNITY SERVICES DISTRICT, JOE ELAM, BOARD OF TRUSTEES OF TAMALPAIS COMMUNITY SERVICES DISTRICT, PEARCE & FRANKMAN, INC., MILLEN GRIFFITH, SPECIAL DISTRICT RISK MANAGEMENT SERVICES AND DOES 1 through 15, <br><br> Defendants. | Case No.: CV08-2354 VRW <br><br> **DEFENDANTS' REPLY BRIEF TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)** <br><br> Date: August 21, 2008 <br> Time: 2:30 p.m. <br> Location: Courtroom 6 <br><br> Honorable Vaughn R. Walker |

COMES NOW, defendants PEARCE & FRANKMAN, INC., and MILLEN GRIFFITH ("PEARCE" or "defendants") and files this Reply to plaintiff's Opposition to PEARCE's Motion for (12)(b)(6) or, in the alternative, motion for a more definite statement under Rule 12(e), because the complaint fails to state a cause of action as to plaintiff's federal and state claims, and the complaint is so vague and ambiguous that PEARCE cannot prepare a meaningful response.

In this Reply PEARCE seeks to incorporate all of its arguments made in the original motion while addressing the arguments raised in plaintiff's Opposition. Specifically, PEARCE contends that pursuant to Federal Rules of Civil Procedure Rule 12(b)(6) the plaintiff cannot cure the defects in the sixth, seventh and eighth causes of action. Therefore, the complaint should be dismissed without leave to amend.

1

DEFENDANTS' PEARCE & FRANKMAN, INC. & MILLEN GRIFFITH'S REPLY BRIEF TO
PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS PURSUANT TO RULE 12 (b) (6)

Alternatively, defendants move this Court for a more definite statement pursuant to rule 12(e).  Plaintiff has not put PEARCE on notice of the allegations charged against PEARCE and thus PEARCE cannot meaningfully respond, nor conduct its own investigation.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The complaint filed in this action is a garden variety inverse condemnation claim that has been dressed up with various intentional torts and allegations of Civil Rights violations.  The plaintiff, Marjory Anderson, lives in Marin County and is provided sewage services by the Tamalpais Community Services District ("TCSD").  On two separate occasions, December 24, 2004 and April 17, 2007 sewage overflowed into plaintiff's home.  Pearce & Frankman, Inc. and Millen Griffith acted as the claims adjuster for the second incident.  PEARCE investigated plaintiff's second claim and reported as necessary to TCSD and the Special District Risk Management Authority ("SDRMA").  The sum and substance of plaintiff's complaint seems to be that she received inadequate compensation for her claim, yet she has raised vague and conclusory allegations attempting to support other tort theories of liability for which no cause of actions is actually stated.

### II. STATEMENT OF ISSUES TO BE DECIDED

Due to the nature of plaintiff's Opposition memorandum, it is unclear which issues remain to be decided.  Therefore, PEARCE maintains that all the issues remain to be decided and refers the Court to its Statement of Issues to be Decided in its Motion.

### III.  LEGAL AUTHORITY

"When a federal court reviews the sufficiency of the complaint, before the reception of any evidence…its task is necessarily a limited one.  The issue is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) In light of that the court must decide if the facts alleged as true, would entitle the plaintiff to some form of legal relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957)  Plaintiff's Opposition relies heavily on the liberal pleading standards of the federal courts and plaintiff begs to amend her pleadings if she has not met those standards.  However, in its

2

motion and this Reply PEARCE has taken all of plaintiff's allegation as true and contends not that Plaintiff will be unable to establish certain allegations at trial, but instead that plaintiff has not made sufficient allegations to support her causes of action and that because these defects cannot be corrected, plaintiff's complaint should be dismissed without leave to amend.

## IV. LEGAL ARGUMENT

### A. PEARCE was Not Acting Under the Banner of Law

In the Opposition, plaintiff argues that PEARCE is state actor because, "SDRMA has chosen an insurance adjustment firm and an insurance adjuster, Pearce and Mr. Griffith, to perform its State functions for it with regard to Ms. Anderson." Opposition, 8: 20-22. On the basis of that and plaintiff's only citation, Evans v. Newton, 382 U.S. 296, 299 (1966) the plaintiff contends that PEARCE may be sued pursuant to a disparate treatment theory because PEARCE was acting in a governmental capacity.[1]

The Fourteenth Amendment has been held to protect individuals from private action that was taken, "under color of law." Lugar v. Edmondson Oil Co., Inc., et al., 457 U.S. 922, 928 (1982) citing United States v. Price, 383 U.S. 787, 794, n.7 (1966) Generally, no matter how abhorrent its actions may be a private actor may not be sued pursuant to the Fourteenth Amendment without a finding that there was action, "under color of law." Id. at 937. The concept of "under color of law" places this action in a better posture because this phrase is more descriptive of what type of association with the government this private actor needs in order to be considered a state actor.

The central focus of this court's inquiry is whether PEARCE's role as the *claims adjuster* on plaintiff's claim was under color of law. George v. Pacific-CSC Work Furlough, (1996) 91 F.3d 1227. In the Opposition, plaintiff contends that paragraphs 78-79 of the complaint state sufficient allegations which demonstrate that PEARCE's actions constituted state action. "Mrs. Anderson alleges, against Pearce and Mr. Griffith, that they did not treat her claims as favorably as they did claims of others who were not of Asian race, of Indian Ancestry, senior citizenship, and/or female

---

[1] In plaintiff's Opposition this is the only theory of PEARCE's motion regarding the eighth cause of action that plaintiff choose to rebut.

3

DEFENDANTS' PEARCE & FRANKMAN, INC. & MILLEN GRIFFITH'S REPLY BRIEF TO
PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS PURSUANT TO RULE 12 (b) (6)

gender, and/or who have religious and spiritual beliefs and practices shared by Defendants and/or more readily acceptable to Defendants." Opposition, 8: 5-10

Since <u>Evans v. Newton</u>, 382 U.S. 296, 299 (1966) the United States Supreme Court has articulated four *approaches* to the state action question:  public function, state compulsion, nexus and joint action.[2]  See <u>Lugar</u>, 457 U.S. at 939.  It is unclear from plaintiff's complaint and the Opposition which of these categories she contends PEARCE's conduct falls into.  However, plaintiff seems to be alleging that by merely working for a public entity PEARCE became a de facto arm of the state and the act of adjusting the claim therefore constitutes state action.  Opposition, 8: 17-25.  PEARCE contends that accepting all allegations as true and after a review of relevant approaches to the state action requirement there is no indication that PEARCE has, "become the government."  <u>George</u>, 91 F.3d at 1230

*The Public Function Test*

The Public Function test is satisfied by demonstrating that the function is "traditionally and exclusively governmental."  See <u>Rendell-Baker v. Kohn</u>, 457 U.S. 830, 842 (1982).  PEARCE contends that it does not satisfy this test because the provision of insurance and claims adjusting are not functions that are traditionally or exclusively practiced by the government.  Simply because PEARCE performs this function for an entity who happens to be a public entity does not convert PEARCE into a state actor and plaintiff has failed to cite any case that supports a contrary ruling.

*The Government Nexus Test*

The nexus test requires the court to consider whether plaintiff's pleading demonstrates sufficiently close State involvement in PEARCE's claims adjusting.  See <u>Rendell-Baker</u>, 457 U.S. at 841-842.  The plaintiff must allege a sufficiently close nexus between the State and the entity, such that the action of the entity may be treated as that of the State itself.  Pursuant to this requirement, the court must be able to say that the State is *responsible* for specific conduct of the entity.  <u>Blum v. Yaretsky</u>, 457 U.S. 991, 1004 (1982)

---

[2] PEARCE will not discuss state compulsion because there are no allegations remotely related to that concept in the complaint.

4

1    PEARCE admits that it was hired by a public entity to adjust a claim. However, that is the
2 extent of the nexus between PEARCE and the State. Plaintiff alleges that she received less
3 compensation than similarly situated people due to her race, national origin, etc. There are no
4 allegations that PEARCE acted in coordination with the State, or that the State directed the manner
5 in which PEARCE adjusted the claim. In <u>Gillson v. The City of Sparks et al.</u>, 2007 U.S. Dist.
6 LEXIS 19350, the court held that there was not a sufficiently close nexus between the co-defendant
7 Taser International Inc. and the Sparks Police Department. In <u>Gillson</u>, the decedent died as a result
8 of excessive use of taser's by the police department during an arrest. A wrongful death action was
9 filed and Taser International Inc. ("Taser") moved to dismiss the causes of action that were based
10 upon an alleged violation of 42 USC § 1983. <u>Id.</u> at 5. The plaintiff alleged that the ties between the
11 State and Taser were clear because the company deployed the tasers used in the arrest to the
12 officers, trained them, developed policies, and provided ongoing consulting services and forensic
13 support for the internal investigation. <u>Id.</u> at 11-12. Despite the significant ties between Taser and
14 the Police Department, the plaintiff failed to demonstrate a nexus between Taser and the State, such
15 that Taser could be treated as if it were the state as a matter of law. The court further noted that if it
16 adopted the plaintiff's standard then every car and gun manufacturer that supplied the police
17 department would become a state actor. The court refused to extend the doctrine this far. <u>Id.</u> at 12

18    Plaintiff has failed to demonstrate a nexus between PEARCE and the State, such that
19 PEARCE could stand in the State shoes. The <u>Gillson</u> case provides a striking contrast to the instant
20 action. First, the plaintiff in <u>Gillson</u> made *significant allegations* in the complaint that Taser was a
21 state actor. The Gillson court utilized the same pleading standards and at the same posture of the
22 case held that the allegations were insufficient to plead a cause of action. Second, the ties that
23 Taser International Inc. had with the Police Department were significant and yet the court found
24 that these ties still did not meet the threshold requirement for the Fourteenth Amendment. If this
25 court were to adopt plaintiff's argument, any third-party vendor who receives a state contract would
26 be perceived as working under the color of law. The nexus test was created to determine if the
27 State was *responsible* for the conduct. If PEARCE is held liable in this action, it will be for its own

28

5

DEFENDANTS' PEARCE & FRANKMAN, INC. & MILLEN GRIFFITH'S REPLY BRIEF TO
PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS PURSUANT TO RULE 12 (b) (6)

1  conduct, as the allegations are insufficient to demonstrate that PEARCE can be held liable as if it
2  were the state.

3  *The Joint Action Test*

4  The Joint Action Test requires that a private party be a willful participant with the State or
5  its agents in an activity which deprives others of constitutional rights. <u>Dennis v. Sparks</u>, 449 U.S.
6  24, 27 (1980).  In <u>Gillson</u>, the court held that simply because Taser manufactured the weapon, sold
7  the weapon, and trained the officers did not make them a willful participant in the improper use of
8  the weapon.  <u>Gillson</u>, 2007 U.S. Dist. Lexis at 10-11.  Despite these allegations, the court still
9  maintained that there was no joint action between the Police Department and Taser International.
10  In this case, the plaintiff only alleges that PEARCE adjusted plaintiff's claim for SDRMA and that
11  this simple act of adjusting for a entity that happened to be a state actor turned PEARCE into a state
12  actor.  The scant allegations in the complaint are not enough to demonstrate that PEARCE was a
13  willful participant with the State.

14  In <u>Brignardello v. Las Vegas Metro Police Dept. et al.</u>, 2006 U.S. Dist. LEXIS 82686 the
15  plaintiff was a police officer suing the third party administrator ("TPA") of the department's
16  industrial insurance claims and an employee of the TPA.   The plaintiff alleged that the TPA and its
17  employee denied him medical care in connection with the administration of the industrial insurance
18  claim under color of law, pursuant to 42 USC § 1983.  The court held,

19  > "Here, Plaintiff failed to set forth any facts showing that CCMSI and/or Swandal conspired with the LVMPD to deprive him of his constitutional rights.  He alleges no specific action
20  > on the part of CCSMI and Swandal that demonstrate "joint action with the state actors to violate" his constitutional rights."  Further, the court went on to note, "Plaintiff has alleged
21  > nothing more than dissatisfaction with the administration of his industrial insurance claim and those he believes are responsible for his dissatisfaction.  Those allegations, however, are
22  > insufficient to support a 1983 action and his claims of such  violation must be dismissed." <u>Brignardello</u>, 6-7.
23

24  The facts of the instant action are startlingly similar to the <u>Brignardello</u> action.[3]  The
25  plaintiff's essential claim is that due to PEARCE's adjusting she received less compensation for her
26  claim than she believed she rightly deserved.  However, besides the fact that PEARCE worked for a
27
28
---
[3] The cases cited above, <u>Gillson,</u>  <u>Brignardello</u> and <u>George</u> were decided prior to Summary Judgment.

public entity, there are no allegations by plaintiff that PEARCE conspired with SDRMA or TCSD to violate her constitutional rights.

Taken all of the allegations in the complaint as true, PEARCE was not acting under the color of law for purposes of *Section* 1983.

**B. Plaintiff has not Plead Sufficient Facts to Establish a Violation of The Unruh Civil Rights Act because TCSD is not a Business Establishment and Thus Plaintiff cannot Prove that she has been Denied Equal Access to a Facility, Privilege or Service.**

In the Opposition plaintiff alleges that ¶¶'s 78-79 of the complaint are plead sufficiently to establish a violation of the Unruh Civil Rights Act as they allege that plaintiff was denied equal access to a facility, privilege or service. If plaintiff is attempting to make a claim under the Unruh Act, then she must allege facts that show how PEARCE denied her access to a business establishment, which, in this case, could only be TCSD. In its motion PEARCE argued that TCSD is not a business establishment. The plaintiff fails to cite to one case which would support her position and those paragraph's in her complaint are insufficient to establish the notion that TCSD is a business establishment. Thus, plaintiff has made no claim that she has been denied equal access to a facility, privilege or service, etc. nor will she be able to cure this defect.

Due to the above and PEARCE's argument in its motion, plaintiff cannot establish a claim for violation of the Unruh Civil Rights Act and it should be dismissed without leave to amend.

**C. As PEARCE is Not a State Actor, the Plaintiff cannot Establish a Cause of Action for Wrongful Interference with a Prospective Economic Advantage**

In her seventh cause of action plaintiff alleged that PEARCE intentionally interfered with a prospective economic advantage by interfering "with Mrs. Anderson's ability to successfully assert her rights as an intended third-party beneficiary of the alleged contractual relationship or business expectance." Complaint ¶ 71. PEARCE contends that the plaintiff cannot establish a cause of action for wrongful interference with a prospective economic advantage because she does not have an economic relationship with TCSD, nor can she prove wrongful conduct by PEARCE.

Plaintiff's main argument in the Opposition is that this cause of action should not be dismissed because the plaintiff has properly plead "wrongful" acts on the part of PEARCE because of allegations of Civil Rights violations. In order to properly plead a wrongful interference cause of

action, the plaintiff must allege that PEARCE engaged in *intentionally wrongful acts* designed to disrupt plaintiff's economic relationship. Korea Supply Company v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1158-1159. An act is "independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or otherwise determinable legal standard." 29 Cal. 4th at 1159. Mere interference alone is not unlawful conduct and the court has made it clear that it will not punish businesses for their choice of commercial pursuits. Id. at 1158-1159. Only now in the Opposition, plaintiff states, "Again, Mrs. Anderson's allegations were that Pearce and Mr. Griffith treated her differently than similarly situated claimants due to her race, ancestry, gender, and religion, in violation of the Fourteenth Amendment and the Unruh Civil Rights Act – wrongful acts, and very good examples of determinable legal standards. Further, Mrs. Anderson alleges that Pearce and Mr. Griffith used their power as SDRMA's "adjuster" to deny her compensation she was entitled to recover from TCSD under California Constitution Art I, § 19."[4]

By plaintiff's own admission, this is the wrongful conduct she was alleging. If this court finds that PEARCE was not acting under the color of law when adjusting plaintiff's claim, then it cannot find that the plaintiff has proffered sufficient facts to state a cause of action for wrongful interference.

Due to the above, plaintiff's claim for Wrongful Interference with a Prospective Economic Advantage should be dismissed without leave to amend.

**D. Plaintiff has Plead Insufficient Facts to Establish that PEARCE had Dominion or Control over Plaintiff's Property**

By plaintiff's own admission in the Opposition she states that, "She does not know which of TCSD, SDRMA, or Pearce hired others working there, but she does know that one of those entities did so." Complaint, pg. 6-7.

Assuming the plaintiff's allegations as true, that PEARCE hired workers that stole or wasted her property, the plaintiff has still plead insufficient facts to establish that PEARCE had "dominion

---

[4] The Plaintiff did not allege a violation of this section of the California Constitution in the complaint. Thus, PEARCE does not feel the need to address that specific issue here. However, since that section refers to Eminent Domain PEARCE contends that direct government authority would need to be involved.

8

DEFENDANTS' PEARCE & FRANKMAN, INC. & MILLEN GRIFFITH'S REPLY BRIEF TO
PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS PURSUANT TO RULE 12 (b) (6)

or control" over her property. <u>Spates v. Dameron Hosp. Assoc.</u>, (2003) 114 Cal. App. 4th 208, 222. Plaintiff will not be able to establish that the mere alleged "hiring" of the cleaning crew evidences some intent on behalf of PEARCE to take dominion or control over plaintiff's property.

### V. CONCLUSION

PEARCE is a claims adjusting firm and the its only job was to adjust plaintiff's claim for SDRMA; no more and no less. For a claims adjuster or any other vendor hired by the State to do contract work to be automatically considered a state actor without something more far exceeds the spirit and letter of the Fourteenth Amendment.

Though the federal court practices notice pleading, the plaintiff must articulate some factual and legal basis on which to file a complaint. Plaintiff cannot plead or prove her state or federal claims as against PEARCE and each and every one of her claims must be dismissed without leave to amend.

Dated: August 7, 2008                    LERCH STURMER LLP

_____
Debra Steel Sturmer, Esq.
Jachyn K. Davis
Attorneys for PEARCE & FRANKMAN, INC.
and MILLEN GRIFFITH